UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES EVERITT<br>    Plaintiff,<br><br>v.<br><br>JARVIS AIRFOIL, INC.<br>    Defendant. | No. 19-CV-1853 (VLB)<br><br>July 23, 2020 |

**MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION TO DISMISS, [DKT. 17]**

Before the Court is Defendant Jarvis Airfoil, Inc.'s Motion to Dismiss [Dkt. 17] Plaintiff James Everitt's Complaint [Dkt.1] pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief may be granted. In the Complaint, Mr. Everitt alleges disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA") and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46(a)-60(b)(1) ("CFEPA") based on Jarvis Airfoil's termination of his employment. For reasons that follow, the Court GRANTS Defendant's motion to dismiss.

## Introduction

For the purpose of deciding Defendant's Motion to Dismiss, the Court "draw[s] all reasonable inferences in Plaintiff['s] favor, assume[s] all well-pleaded factual allegations to be true, and determine[s] whether they plausibly give rise to

1

an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d. Cir. 2011) (citations omitted).

Jarvis Airfoil hired Mr. Everitt in March 2012 to work as a Polisher/Hand Finisher to prepare or repair aircraft engine parts. [Compl. ¶¶ 11, 12]. Beginning in 2014, Mr. Everitt complained to an unidentified employee of Jarvis Airfoil that he was called a "retard," an "operator whit out brains,"(sic) and "born wrong" by his co-workers. [Compl. ¶ 12]. In response to the conduct, Mr. Everitt retained an attorney who demanded that the conduct cease. [*Id.*]. The Complaint does not allege to whom this demand was made or the upshot of the complaint.

Plaintiff was diagnosed with carpal tunnel syndrome in June 2015 and alerted Jarvis Airfoil to the diagnosis. [Compl. ¶ 13]. He underwent a carpal tunnel release, a surgical procedure, in October 2015 and again in October 2018, seven months after his termination. [Compl. ¶ 20]; *See Carpal Tunnel Release*, Johns Hopkins Medicine, [https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/carpal-tunnel-release.](https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/carpal-tunnel-release.) Additionally, Mr. Everitt has had an ongoing workers' compensation claim for carpal tunnel injuries sustained in the course of his employment with Jarvis Airfoil. [Compl. ¶ 19]. The Complaint does not disclose the date the claim was filed, the nature of the claimed injury or the nature or extent of any alleged disability.

In March 2018, Plaintiff discovered that a co-worker stole one of his personally owned polishing tools and hid the tool in the co-worker's toolbox. [Compl. ¶ 14]. After Mr. Everitt discovered the theft, the co-worker became upset

and began yelling in "another language besides English" and made a slashing motion with his hand across his neck. [*Id.*]. After his shift ended, Plaintiff was contacted by Jarvis Airfoil's human resources representative, Ms. DeLeon, who vaguely told him that he was suspended while they investigated the incident. [Compl. ¶ 15]. The next morning, Ms. DeLeon called Mr. Everitt to tell him that he had shoved the co-worker who had stolen his tool. [Compl. ¶ 16]. Mr. Everitt denied shoving his co-worker and informed Ms. DeLeon that the co-worker had stolen Mr. Everitt's polishing tool and had threatened him. [*Id.*]. A few hours later, Ms. DeLeon called Mr. Everitt while the shift supervisor, Mr. DiRubbo, and the manufacturing supervisor, Mr. Luddy, were also on the line. [Compl. ¶ 17]. During the call, Mr. Luddy yelled and swore at Mr. Everitt and asked what he had done to his co-worker. [*Id.*]. Ms. DeLeon then informed Mr. Everitt that he was terminated. [*Id.*]. Plaintiff was not interviewed by anyone at Jarvis Airfoil prior to his termination. [Comp. ¶ 18]. Seven months after his termination, Plaintiff underwent a second carpal tunnel surgery. [Comp. ¶ 20]

## Legal Standard

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-

pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## Analysis

### I. Parties' Arguments

In support of their Motion to Dismiss, Defendant argues that Plaintiff fails to plausibly allege any facts to suggest that Plaintiff was terminated on account of an actual or perceived disability. [Dkt. 17-1 (Def. Mem. in Supp. at 5-6]. Defendant's second argument is that Plaintiff has not plausibly alleged that he is disabled under the ADA, as his allegations of a perceived disability are limited to his co-workers' disparaging comments in 2014, nearly four years before his termination. As to his alleged physical disability, it rests only on his carpal tunnel diagnosis, supported by an October 2015 surgery, a post-termination surgery, and an on-going workers' compensation claim. [Dkt. 17-1 at 7-9].

In opposition, Plaintiff argues that, although he need not plead a prima facie case of discrimination, he has in fact done so. [Dkt. 22 (Pl. Mem. in Opp'n) at 2-3]. Plaintiff argues that Defendant was on notice of his perceived mental disabilities based on his complaint about offensive conduct in 2014. [*Id.* at 3-4]. Plaintiff argues that Defendant was aware of Plaintiff's carpal tunnel syndrome. [*Id.* at 3]. Plaintiff argues that he has alleged facts tending to show that his termination was pretextual for discrimination, i.e. that Defendant did not conduct an actual investigation into threats made against Plaintiff. [*Id.* at 4].

In reply, Defendant contends that Plaintiff's allegations are devoid of a factual nexus between Defendant's awareness of Plaintiff's alleged disabilities and his termination three years later. [Dkt. 23 (Def Repl. Br.) 1-2](citing *Lewis v. Clark*, No. 3:14-CV-01592 RNC, 2015 WL 3905315, at *1 (D. Conn. June 25, 2015)). On the second issue, Defendant maintains Plaintiff has not alleged that his carpal tunnel amounts to a physical disability as "…the more reasonable inference is that

5

Plaintiff's carpal tunnel syndrome was temporary and alleviated by surgery." [*Id.* at 4].

The Court granted Plaintiff's motion for leave to file a sur-reply. [Dkt. 25 (Order)]. Plaintiff replies that Defendant's reply brief misrepresents the facts of *Lewis v. Clark* and Judge Chatigny's reasoning in dismissing a former graduate student's public accommodation claim under the ADA. [Dkt. 26 (Pl. Sur-Repl. Br.) at 2-3]. Plaintiff argues the instant case is distinguishable from *Lewis v. Clark*, where the graduate student alleged that "Plaintiff's…A Disabled Person," without any other factual assertions. [*Id.* at 3]. Plaintiff's sur-reply adds additional facts arguing that Defendant did nothing to remedy harassment by his co-workers. [*Id.* at 4]. These additional facts go beyond the permissible scope of the sur-reply and were not alleged in the Complaint. [Dkt. 25 (Order)]("… must be strictly confined to a Plaintiff's argument that Defendants reply brief does not properly reflect the status of the law, and must contain references to the pages of Defendant's reply brief that Plaintiff is responding to."). Plaintiff's sur-reply argues that the Defendant's construction of the plausibility requirement under *Twombly/Iqbal* amounts to a summary judgment standard, not the standard applicable on a motion to dismiss. [*Id.* at 1-2].

II. **How is the *Twombly/Iqbal* pleading standard applied to discrimination cases?**

Before addressing the legal sufficiency of Plaintiff's allegations, an initial discussion of the application of the Fed. R. Civ. P. 8(a)(2) pleading standard, as interpreted by *Twombly/Iqbal*, to employment discrimination cases is warranted.

The outcome of the motion hinges on how this standard applies and the parties disagree widely on its construction and application to the facts alleged in the Complaint.

Fed. R. Civ. P. 8(a)(2) states only that "[a] pleading that states a claim for relief must contain: a short and plain statement of the claim showing that the pleader is entitled to relief." Historically, settled precedent in the Second Circuit required a plaintiff alleging discrimination to plead facts constituting a prima facie case of discrimination. *Austin v. Ford Models, Inc.*, 149 F.3d 148, 154 (2d Cir. 1998). The Supreme Court abrogated the Second Circuit's pleading rule in *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002). In *Swierkiewicz*, the Supreme Court noted that the burden shifting framework fashioned by *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its progeny are evidentiary standards for disparate treatment employment discrimination cases, not pleading requirements. *Swierkiewicz*, 534 U.S. at 510-11. Further, for purposes of notice pleading, a plaintiff may prevail on a discrimination claim without demonstrating a prima facie case because the *McDonnell Douglas* framework applies to inferential claims of discrimination, not claims shown through direct evidence. *Id.* at 510-12 (citing *Trans World Airlines v. Thurston*, 469 U.S. 111, 121 (1985)).

As the Second Circuit noted in *EEOC v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 253-54 (2d Cir. 2014), *Swierkiewicz* was decided before *Twombly* and *Iqbal* and was applying the "retired" pleading standard from *Conley v. Gibson*, 355 U.S. 41, 47 (1957). "Contrary to *Conley* 's "no-set-of-facts" standard, which requires only that a complaint not preclude the viability of claims, *Twombly* and *Iqbal* require

7

that a complaint support the viability of its claims by pleading sufficient nonconclusory factual matter to set forth a claim that is plausible on its face." *Id.* at 253 (citing *Twombly*, 550 U.S. at 555 and *Iqbal*, 556 U.S. at 678). *Twombly*, an antitrust case, addresses *Swierkiewicz* in affirming that the plausibility pleading requirement under *Twombly* is not a heightened pleading standard. *Twombly*, 550 U.S. at 569-70. Based on that, and the decisions of sister circuits, the Second Circuit held that "while a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, see *Swierkiewicz*, 534 U.S. at 510 (noting that the prima facie case requirement is an evidentiary standard), it must at a minimum assert nonconclusory factual matter sufficient to " 'nudge[ ] [its] claims'... 'across the line from conceivable to plausible'" to proceed, *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570)." *Port Auth. of New York & New Jersey*, 768 F.3d at 254. With this standard in mind, the Second Circuit affirmed the dismissal of the EEOC's Equal Pay Act claim because the EEOC did not plausibly allege that female attorneys' job content was 'substantially equal' across the Port Authority's operations. *Id.* at 256.

Still, *Port Auth. of New York & New Jersey* does not fully address how the *Twombly/Iqbal* pleading rules apply to Title VII cases since *Port Authority* was an Equal Pay Act claim, which does not fall under the *McDonnell Douglas* burden-shifting framework. *Littlejohn v. City of New York*, 795 F.3d 297, 309, n.7 (2d Cir. 2015). The Second Circuit clarified the interplay of *Swierkiewicz* and *Twombly/Iqbal* in *Littlejohn*, 795 F.3d 297, which was a Title VII race discrimination and retaliation

8

case applying the *McDonnel Douglas* framework. In *Littlejohn*, the Second Circuit held that:

> ….absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent. The facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation. The facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation.

795 F.3d at 311 (2d Cir. 2015)(footnote omitted).

### III. Whether Plaintiff has plausibly alleged that he is "disabled" under the ADA.

As *Littlejohn* explains, Plaintiff must plausibly allege that he is a member of a protected class. Under the ADA, an individual is disabled when, "with respect to that individual: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

The ADA further defines what constitutes a "major life activity" to include, "but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." § 12102(2)(A). Major life activities also include major bodily functions, which are separately defined, e.g. digestive, bowel, bladder, neurological, and brain functions. § 12102(2)(B).

An individual is regarded as having a disability "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." § 12102(3)(A). This language was a congressional abrogation of the Supreme Court's decision in *Sutton v. United Air Lines, Inc.* 527 U.S. 471 (1999), which held that an individual could only be regarded as disabled where the perceived disability is thought to substantially limit a major life activity. S*ee Young v. Precision Metal Prod., Inc.*, 599 F. Supp. 2d 216, 223 (D. Conn. 2009). By statute, the definition of disability is construed broadly. § 12102(4)(A).

An individual cannot be "regarded as disabled" if the impairment is "…transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." § 12102(3)(B).

### a. Plaintiff's perceived disability claim based on former co-workers' disparaging comments about his mental acuity.

First, the Court agrees with the Defendant that Plaintiff's allegations that his former co-workers called him disparaging names related to mental acuity and that he complained about the conduct is insufficient to plausibly show that the *employer* regarded him as disabled. Whether an individual is "regarded" as having a disability turns on the covered entity's intent. *Francis v. City of Meriden*, 129 F.3d 281, 284 (2d Cir. 1997)("This turns on the employer's perception of the employee, a question of intent, not whether the employee has a disability."). The 2008 amendments to the ADA's "regarded as disabled" provision did not alter this

dimension of the analysis; the focus remains the employer's intent. *Palmieri v. City of Hartford*, 947 F. Supp. 2d 187, 200 (D. Conn. 2013)("As a result of this change, plaintiffs need only demonstrate that the employer regarded them as impaired, whether or not that impairment is believed to limit a major life activity.").

Accepting Mr. Everitt's co-workers' disparaging statements literally, they would suggest that his former *co-workers* believed that Mr. Everitt was mentally disabled. Even if Jarvis Airfoil knew of the co-workers' disparaging remarks, Plaintiff offers no factual allegations to suggest that Jarvis Airfoil believed those statements to be true, viz. some ratification of those statements through words or actions after he reported the statements in 2014 through his termination in October 2018.

Notably, Plaintiff is not proceeding on a claim that he was harassed on account of a perceived disability. None of the cases cited by Plaintiff hold that an employer's notice of co-workers' harassing comments related to physical or mental impairments is enough to plausibly establish the existence of a "perceived" disability claim without more. [Dkt. 22 (Pl. Mem. in Opp'n) at 3-4].[1] Accordingly, the Court dismisses Plaintiff's ADA disability discrimination claim as to his perceived

---

[1] *Joseph v. N. Shore Univ. Hosp.*, No. CV 08-3799 ARL, 2011 U.S. Dist. LEXIS 14926, *29-31, (E.D.N.Y. Feb. 15, 2011), *aff'd*, 473 F. App'x 34 (2d Cir. 2012)(summary judgment granted under pre-ADAAA amendments where employer-hospital regarded plaintiff's foot condition as temporary); *Darcy v. City of New York*, No. 06-CV-2246 RJD, 2011 WL 841375, at *1 (E.D.N.Y. Mar. 8, 2011)(summary judgment denied where deputy police chief repeated his belief that plaintiff was an alcoholic to a police captain who adversely transferred plaintiff a few months later); *Pagan v. Morrisania Neighborhood Family Health Ctr.*, No. 12 CIV. 9047 WHP, 2014 WL 464787, at *5 (S.D.N.Y. Jan. 22, 2014)(motion to dismiss denied where plaintiff had a "laundry list" of maladies and his supervisor repeatedly questioned why he did not retire because of his illness).

11

mental impairments because he has not plausibly alleged that Jarvis Airfoil regarded him as disabled within the meaning of the ADA.

### b. Plaintiff's physical disability claim based on his carpal tunnel syndrome.

On the second issue, the Court also agrees with the Defendant that Plaintiff has not plausibly alleged that he is disabled under the ADA because of his carpal tunnel syndrome. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 199 (2002) is instructive. In concluding that a diagnosis of carpal tunnel alone was insufficient to establish a disability under the ADA, the Supreme Court addressed relevant medical science showing variation in the severity and duration of carpal tunnel syndrome. *Id.* ("While cases of severe carpal tunnel syndrome are characterized by muscle atrophy and extreme sensory deficits, mild cases generally do not have either of these effects and create only intermittent symptoms of numbness and tingling." *Id.* (citing Carniero, Carpal Tunnel Syndrome: The Cause Dictates the Treatment, 66 Cleveland Clinic J. Medicine 159, 161–162 (1999)). There, the Supreme Court held that an individualized assessment of the effect of the medical condition was necessary. *Toyota Motor Mfg. Ky.*, 534 U.S. at 199.

The Court recognizes that Congress expressly overturned *Toyota Motor Mfg., Ky.* when it amended the ADA to reject the Supreme Court's interpretation of the term "disability" by expanding the definition of what constitutes a major life activity. ADA AMENDMENTS ACT OF 2008, PL 110–325, September 25, 2008, 122 Stat 3553. But while the statutory framework under which Plaintiff's claim is analyzed changed after *Toyota Motor Mfg., Ky.* it remains true that a "medical

diagnosis alone does not necessarily demonstrate that a plaintiff had an impairment under the ADA." *DeAngelo v. Yellowbook Inc.*, 105 F. Supp. 3d 166, 174 (D. Conn. 2015); *see also Concepcion v. Continuum of Care*, No. 3:17-CV-1854 (VLB), 2018 WL 6529178, at *4 (D. Conn. Dec. 12, 2018)("Plaintiff alleges that she has anxiety, but she fails to allege that her anxiety affected a major life activity."); *Cutler v. Hamden Bd. of Educ.*, 150 F. Supp. 2d 356, 360 (D. Conn. 2001)(surveying cases holding that carpal tunnel does not constitute a disability under the ADA *per se*).

The Court disagrees with the Defendant's contention that "…the more reasonable inference is that Plaintiff's carpal tunnel syndrome was temporary and alleviated by surgery." [Dkt. 23 (Def. Repl. Br.) at 4]. On a motion to dismiss, the Court draws all reasonable inferences in a plaintiff's favor, even if an alternative inference drawn from the same facts is more reasonable.[2] Under the federal pleading standard, the diagnosis of carpal tunnel syndrome alone is insufficient for the Court to draw any inference that the medical condition "substantially limits one or more major life activities" as defined by the ADA, 42 U.S.C. § 12102(1). Since Plaintiff has not plausibly alleged that he is disabled within the meaning of the ADA, Plaintiff cannot establish that Jarvis Airfoil acted with discriminatory intent when it terminated him.

---

[2] For example, Plaintiff's former co-workers' disparaging comments may be reasonably interpreted to express their disdain for Plaintiff or his actions at the time rather than their earnestly held belief that he suffered from some cognitive disfunction. But, for purposes of the motion to dismiss, the Court assumes that Plaintiff's former co-workers meant what they said literally, even if the former interpretation is more reasonable.

Finally, Plaintiff does not allege he was regarded as disabled by Jarvis Airfoil based on carpal tunnel syndrome. While he alleges he suffered a carpal tunnel injury at work years before his termination, had surgery and maintained a workers compensation claim, his complaint is devoid of any facts concerning the claim or the effect of the injury and thus fails to state a perceived disability claim based on this syndrome. Notably, it is not all together clear that Plaintiff is alleging a perceived disability claim based on the syndrome.

Accordingly, the Court must dismiss Plaintiff's ADA claim in its entirety.

### c. Plaintiff's CFEPA claim

As to Plaintiff's claim that his carpal tunnel renders him physically disabled under Connecticut law, "Connecticut case law is clear that carpal tunnel syndrome is considered a disability under the CFEPA, and individuals who can show they suffer from carpal tunnel syndrome are protected under that statute." *Sorak v. Companions & Homemakers, Inc.*, No. HHDCV126028007S, 2014 WL 3397784, at *3 (Conn. Super. Ct. May 30, 2014). Since Plaintiff's federal claims are dismissed and there is no diversity jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Accordingly, Count 2 is dismissed without prejudice.

### Conclusion

For the aforementioned reasons, the Court GRANTS Defendant's motion to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state

a claim on which relief may be granted as to Count 1, disability discrimination under the ADA. The Court declines to exercise supplemental jurisdiction over Plaintiff's disability discrimination claim under state law and Count 2 is dismissed without prejudice.

                                          IT IS SO ORDERED

                                    _____/s/_____

                                    Hon. Vanessa L. Bryant
                                    United States District Judge

Dated at Hartford, Connecticut: July 23, 2020