**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **JAMES EVERITT** | : | |
| **Plaintiff,** | : | |
| | : | **No. 19-CV-1853 (VLB)** |
| **v.** | : | |
| | : | |
| **JARVIS AIRFOIL, INC.** | : | **December 08, 2020** |
| **Defendant.** | : | |
| | : | |
| | : | |
| | : | |
| | : | |

## MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION TO DISMISS, [DKT. 33]

Before the Court is Defendant Jarvis Airfoil, Inc.'s Motion to Dismiss [Dkt. 33] Plaintiff James Everitt's Amended Complaint [Dkt. 32] pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. This Court previously dismissed the action without prejudice and provided Plaintiff with leave to file an amended complaint. [Dkt. 31](also available at *Everitt v. Jarvis Airfoil, Inc.*, No. 19-CV-1853 (VLB), 2020 WL 4227786, (D. Conn. July 23, 2020)). Defendant now moves to dismiss the amended complaint with prejudice on the basis that Plaintiff fails to cure the previously identified defects and fails to plausibly state a claim for discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46(a)-60(b)(1) ("CFEPA"). For reasons stated below, the Court GRANTS Defendant's second motion to dismiss as to Plaintiff's ADA claim and the Amended Complaint [Dkt. 32] is dismissed with prejudice as to Plaintiff's ADA claim. The

1

Court declines to exercise jurisdiction over Plaintiff's CFEPA claim. Accordingly, Plaintiff's state law claim is dismissed without prejudice.

## Introduction

For the purpose of deciding Defendant's motion to dismiss, the Court "draw[s] all reasonable inferences in Plaintiff['s] favor, assume[s] all well-pleaded factual allegations to be true, and determine[s] whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d. Cir. 2011) (citations omitted).

The Court assumes the parties' familiarity with the record. Applying the standard from *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015), the Court previously dismissed Plaintiff's complaint because he failed to allege sufficient facts to give plausible support to an inference that he was terminated on account of his actual or perceived disabilities. *Everitt*, 2020 WL 4227786, at *4-6. Specifically, the Court held that Plaintiff's allegations about his co-workers' disparaging comments that referred to him as mentally retarded, taken as literally true, were insufficient to show that Jarvis Airfoil regarded Mr. Everitt as being intellectually disabled. *Id.* at 4-5. The Court also held that Plaintiff's carpal tunnel syndrome diagnosis was insufficient to plausibly allege that he is disabled under the ADA because "[w]hile he alleges he suffered a carpal tunnel injury at work years before his termination, had surgery and maintained a workers compensation claim, his complaint is devoid of any facts concerning the claim or the effect of the injury and thus fails to state a perceived disability claim based on this syndrome." *Id.* at

2

6. The Court provided Mr. Everitt with leave to file an amended complaint within twenty-one days of the Court's decision dismissing the complaint. [Dkt. 31]. A timely amended complaint followed. [Dkt. 32 (Am. Compl.)].

Briefly, according to the amended complaint, Mr. Everitt was employed as a polisher/hand finisher by Jarvis Airfoil, a manufacturing firm. [Dkt. 32 (Am. Compl.) ¶ 11]. During most of his employment, Mr. Everitt was constantly referred to by co-workers as a "retard," sometimes while his co-workers struck their hands against their chests, an "operator whit out brains," (sic) and "born wrong." [Am. Compl. ¶ 12]. On at least one instance, Phil, a supervisor, witnessed Mr. Everitt's co-workers' behavior. [Am. Compl. ¶ 13]. Plaintiff frequently reported the issue to the human resources managers, who told Plaintiff that they would address the issue, but they never did so. [Am. Compl. ¶ 13]. In August 2014, Mr. Everitt's attorney sent a letter to Jarvis Airfoil reporting his co-workers' comments, asserting that their conduct violated anti-discrimination laws, and demanding that it cease. [Am. Compl. ¶ 15]. The letter further stated that Jarvis Airfoil attempted to pressure Mr. Everitt to sign a false confession stating that he threatened a co-worker and brought a gun and a knife to work, but Mr. Everitt refused to sign it. [*Id.*].

After his attorney sent the letter, Mr. Everitt was diagnosed with carpal tunnel syndrome in his left wrist and he reported the diagnosis to Jarvis Airfoil. [Am. Compl. ¶ 16]. Jarvis Airfoil learned that a doctor assessed him with a 2% permanent disability rating in his left wrist through the workers' compensation claim that Mr.

Everitt initiated. [Am. Compl. ¶ 16]. He underwent a surgery[1] in October 2015 to resolve the carpal tunnel in his left wrist. [Am. Compl. ¶ 18]. Mr. Everitt does not allege that he experienced any complications from the surgery or continual effects or functional limitations from the carpal tunnel syndrome in his left wrist. However, in the winter of 2017-2018, Mr. Everitt reported to Jarvis Airfoil that he was beginning to have similar issues with his right wrist. [Am. Compl. ¶ 20]. Similarly, Mr. Everitt does not allege that he experienced any functional limitations in his right wrist. Plaintiff does not specify the severity or duration of the condition or claim that he underwent any treatment for his right wrist. As to his right wrist, Jarvis Airfoil failed to take any action or file a workers' compensation claim on his behalf. [*Id.*]. Mr. Everitt does not allege that he requested any modification of his job duties on account of his carpal tunnel in either wrist or that Jarvis Airfoil modified any of his job duties unilaterally.

On March 1, 2018, Mr. Everitt's co-worker stole his personal tool and hid it from him resulting in a physical and verbal altercation. [Am. Compl. ¶ 21]. When Mr. Everitt discovered his missing tool, "…the co-worker approached the Plaintiff in a very aggressive, upset manner. Raising his voice to the Plaintiff, the co-worker began yelling in another language besides English. He then made a slashing motion with his hand across his neck. The Plaintiff's shift was then over and he left to go home." [*Id.*]. Later that day, Mr. Everitt was informed of an ongoing

---

[1] As the Court explained in its decision on Defendant's first motion to dismiss, a "carpal tunnel release" is a surgical provedure. *See Carpal Tunnel Release*, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/carpal-tunnel-release.

4

investigation and that he was suspended. [Am. Compl. ¶ 22]. The next day, the human resources manager informed Mr. Everitt that she believed Mr. Everitt shoved his co-worker. [Am. Compl. ¶ 23]. Mr. Everitt denied the allegation and informed the human resources manager that his co-worker stole his tool and threatened him. [*Id.*]. Later that day, Mr. Everitt was terminated during a conference call with the human resources manager and two production managers, one of whom yelled and swore at Mr. Everitt. [Am. Compl. ¶ 24]. Mr. Everitt was not interviewed by Jarvis Airfoil regarding the events resulting in his termination. [Am. Compl. ¶ 25]. Mr. Everitt has an on-going workers' compensation claim for his right wrist. [Am. Compl. ¶ 26].

## Legal Standard

This Court has previously set forth the legal standard under which it reviews Plaintiff's claims. *Everitt*, 2020 WL 4227786 at *2. In order to survive a motion to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court should evaluate this using a two-pronged approach under which it first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth,'" and second, "[determine] whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

678. (internal quotations omitted). Generally, the Court's review "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

The Court's earlier decision previously addressed how the plausibility pleading standard applies to the evidentiary framework for proving disparate treatment employment discrimination claims based on indirect evidence. *Everitt*, 2020 WL 4227786 at *3-4. In *Littlejohn*, 795 F.3d at 307-310, the Second Circuit held that *Iqbal's* requirement to plead facts sufficient to support plausibility applies to Title VII complaints. At the pleading stage, absent direct evidence of discrimination, a plaintiff's allegations "*must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class*, was qualified, suffered an adverse employment action, *and* has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id*. (emphasis added).

Plaintiff has argued, again, that "plaintiffs in employment discrimination cases, including ADA discrimination cases, are not required to establish a prima facie case at the motion to dismiss stage .... [a]t this stage, a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." [Dkt. 37 (Pl. Mem. in Opp'n) at 2](quoting *Zako v. Encompass Digital Media, Inc.*, No. 3:19-CV-844 (MPS), 2020 WL 3542323, at *7 (D. Conn. June 30, 2020). While the Court agrees that Plaintiff is not required to prove a prima facie claim of discrimination to survive a motion to dismiss, the reduced burden of plausibly alleging facts

tending to show a "minimal inference" of discrimination does not obviate the requirement that Plaintiff plausibly allege that he is disabled within the meaning of the ADA. *Littlejohn*, 795 F.3d at 311.

"The elements of a [discrimination] claim under the ADA are that: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir.2015). Plaintiff must plausibly allege that he is disabled within the meaning of the ADA or perceived to be so by Jarvis Airfoil because it is an element of Plaintiff's disability discrimination claim. Whether Plaintiff has alleged "plausible support to a minimal inference of discriminatory motivation," is a reduced burden applicable at this procedural stage regarding the fifth element of Plaintiff's claim: whether the adverse action was imposed because he is disabled or perceived to be disabled. For example, in *Zako*, 2020 WL 3542323, at *8, the plaintiff plausibly alleged that he was disabled or regarded as disabled based on the effects of a medical condition causing frequent urination and he alleged facts plausibly showing a "minimal inference of discriminatory motivation" based on treatment of comparators, allegations that his termination was pretextual, and demeaning comments by two supervisors regarding his frequent urination. In short, alleging facts showing a "minimal inference of discriminatory motivation" is a necessary, but not a sufficient condition to survive a motion to dismiss. "Courts

have held that 'dismissal is appropriate where a plaintiff fails to allege how an impairment limits a major life activity.'" *Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 2d 193, 210 (D. Conn. 2012)(Bryant, J) (quoting *Heckmann v. Town of Hempstead*, No. CV10–5455(SJF)(GRB), 2012 WL 1031503, at *4 (E.D.N.Y. Feb. 24, 2012)).

Since Plaintiff alleges that he is physically disabled under the ADA and that Jarvis Airfoil perceived him to have a mental disability, the Court will address the applicable standards separately. Because the Court concludes that Plaintiff failed to plausibly allege that he is either physically disabled or that Jarvis Airfoil regarded him as disabled, the Court declines to consider Defendant's remaining argument that Plaintiff also fails to plausibly allege a nexus between his alleged disabilities and his termination.

    i.    <u>Whether Plaintiff has plausibly alleged that he is disabled under the ADA</u>

In support of its Motion to Dismiss, Defendant argues that Plaintiff has still failed to plausibly allege any facts to suggest that he is disabled or regarded as disabled, as defined by the ADA. [Dkt. 38 (Def. Mem. In Supp.) at 4-8]. As to his physical disability, Defendant argues that Plaintiff has not alleged that his carpal tunnel syndrome substantially limits a major life activity and his permanent rating alone is insufficient to infer a substantial limitation. [*Id*. at 6-8].

The ADA, as amended, defines disability, with respect to an individual, as

A) a physical or mental impairment that s*ubstantially limits one or more major life activities of such individual*;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment (as described in paragraph (3)).

**42 U.S.C. § 12102(1)(emphasis added)**

The ADA sets forth a non-exclusive list of major life activities "…include[ing], but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," and by incorporation, "major bodily functions," which are separately defined. 42 U.S.C. § 12102(2)(A). By statute, the definition of disability is to be construed broadly. 42 U.S.C. § 12102(4)(A).

"An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section." 29 C.F.R. § 1630.2(j)(1)(ii); *see also Morey v. Windsong Radiology Grp.*, P.C., 794 F. App'x 30, 33 (2d Cir. 2019)(affirming dismissal of complaint because plaintiff failed to plausibly state a claim by failing to allege further facts as to how her asserted disability (height of four feet five inches tall) "substantially limits" her "major life activities.").

In considering whether a major life activity is substantially limited by an impairment, courts consider "the nature and severity of the impairment; its

duration or expected duration; and the existence of any actual or expected permanent or long-term impact." *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005); see *also Wanamaker*, 899 F. Supp. 2d at 211(dismissing complaint because plaintiff failed to allege that her transverse myelitis limits a major life activity and that any impairment caused by her medical condition was not for a short period of time).

Here, Plaintiff fails to allege that his carpal tunnel syndrome "substantially limits" his "major life activities" despite the Court's prior decision identifying Plaintiff's sole reliance on the diagnosis as a pleading deficiency.  [Dkt. 33 (Def. Mem. in Supp.) at 8]. Plaintiff reiterates his previous argument that he need not plead a prima facie case of discrimination, only facts sufficient to give plausible support to a minimal inference of discriminatory conduct. [Dkt. 37 (Pl. Mem. In Opp'n.) at 2]. Plaintiff further argues that carpal tunnel syndrome is not categorically excluded as a disability under the ADA, that his permanent disability rating as determined by a doctor is 2%, and that Jarvis Airfoil was aware of his carpal tunnel diagnosis and the permanency rating from his workers' compensation claim. [*Id.* at 3]; see [Am. Compl. ¶¶ 16-17]. None of these arguments are availing.

As the Court previously explained "under the federal pleading standard, the diagnosis of carpal tunnel syndrome alone is insufficient for the Court to draw any inference that the medical condition "substantially limits one or more major life activities," as defined by the ADA, 42 U.S.C. § 12102(1). *Everitt*, 2020 WL 4227786, at *6. The statute makes plain that whether an individual is disabled is a functional

inquiry, not bound by a diagnostic label. 42 U.S.C. § 12102(1)(A). *DeAngelo v. Yellowbook Inc.*, 105 F. Supp. 3d 166, 174-75 (D. Conn. 2015) ("A medical diagnosis alone does not necessarily demonstrate that a plaintiff had an impairment under the ADA. Rather, the ADA requires those claiming the Act's protection to prove a disability by offering evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial.")(citations and internal quotations omitted).

Again, "[i]n considering whether a major life activity is substantially limited by an impairment, courts consider the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact." *Mazzeo v. Mnuchin*, 751 F. App'x 13, 15 (2d Cir. 2018) (internal quotation marks omitted). Here, Plaintiff's amended complaint does not allege any facts tending to show that his carpal tunnel syndrome limits in any way his ability to perform tasks constituting a "major life activity," much less "substantially limits" that function, compared to the general population. The Court cannot reasonably draw any conclusions about whether Plaintiff experiences any functional limitations, or the scope of those limitations, based on Plaintiff's diagnosis alone and his 2% permanent disability rating because states' workers' compensation systems rely on different standards than those applicable to the ADA and each serves different ends. *Buotote v. Illinois Tool Works, Inc.*, 815 F. Supp. 2d 549, 558 (D. Conn. 2011)(granting summary judgment where "…Plaintiff provides no context for the functional meaning of a 17–percent rating, and disability determination for workers compensation are based on a "completely

11

different standard than [those] imposed by the ADA" and state-law analogues.")(quoting S*hepherd v. Buffalo Psychiatric Center*, No. 05cv563C, 2009 WL 5042629, *3 (W.D.N.Y. Dec. 15, 2009)).

The Court rejects Plaintiff's argument that "[c]arpal tunnel is not a diagnosis that is categorically excluded from inclusion of a disability under the ADA…" as indicative that his alleged impairment constitutes a disability under the ADA by negative inference. [Dkt. 37 (Pl. Mem in Opp'n) at 3]. Apart from the issue that the statute makes clear that whether an individual is disabled is a functional inquiry, it bears mentioning that the ADA contains a few provisions in the miscellaneous subchapter of the act that expressly exclude certain conditions from qualifying as disabilities under the act even if they would satisfy the functional requirements to constitute a disability. *See, e.g.* 42 U.S.C. § 12114 (excluding from coverage "an individual who is currently engaging in the illegal use of drugs," subject to qualifications regarding treatment status); *see, e.g.* 42 U.S.C. § 12210 (" [the] term "disabled" or "disability" shall not apply to an individual solely because that individual is a transvestite."). It does not follow that any non-excluded impairment legally constitutes a disability, regardless of its severity or duration.

Although the definition of disability is construed broadly, its contours are not limitless. In the absence of any allegations that Plaintiff's carpal tunnel "substantially limits one or more major life activities," Plaintiff fails to allege that he is disabled within the meaning of subsection (A) of the ADA. *See Morey*, 794 F. App'x at 33 (affirming dismissal of complaint where plaintiff failed to allege further facts as to how her disability "substantially limits" her "major life activities"). There

12

are no allegations that Plaintiff "had a record of such impairment" within the meaning of subsection (B). Plaintiff has long been aware of this requirement and the fact his complaint does not satisfy the requirement, therefore leave to amend is unwarranted as futile. The Court now turns to the question of whether the Defendant sufficiently alleges he was discriminated against based on the perception that he was disabled.

> ii.   **Whether Plaintiff has plausibly alleged Defendant perceived him as intellectually disabled under the ADA**

Under the ADA, as amended, an individual who is not disabled may assert a claim for "'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).[2]

Whether an individual is "regarded" as having a disability turns on the covered entity's intent. *Francis v. City of Meriden*, 129 F.3d 281, 284 (2d Cir. 1997)("This turns on the employer's perception of the employee, a question of intent, not whether the employee has a disability."). The 2008 amendments to the ADA's "regarded as disabled" provision did not alter this dimension of the analysis; the focus remains the employer's intent. *Palmieri v. City of Hartford*, 947 F. Supp. 2d

---

[2] Prior to January 1, 2009, when the ADA Amendments Act went into effect, a plaintiff "seeking to avail himself of the 'regarded as' prong of the definition of 'disability' needed to show that he was perceived as both 'impaired' and 'substantially limited in one or more major life activities.' *Hilton v. Wright*, 673 F.3d 120, 128 (2d Cir.2012) (discussing ADA Amendments Act).

187, 200 (D. Conn. 2013)("As a result of this change, plaintiffs need only demonstrate that the employer regarded them as impaired, whether or not that impairment is believed to limit a major life activity.").

Defendant argues that the inclusion of additional facts in the amended complaint alleging that Plaintiff's supervisor observed co-workers' harassment once and that Plaintiff reported their conduct to the human resources managers fails to plausibly allege that the employer, Jarvis Airfoil, perceived Mr. Everitt to have a mental disability. [Dkt. 33 (Def. Mem. in Supp.) at 7-8]. In opposition, Plaintiff's cites *Zako v. Encompass Digital Media*, 2020 WL 3542323 at 8 for the proposition that an employee may be regarded as disabled for pleading purposes where "the supervisor had knowledge of what the employee was facing at work." [Dkt. 37 (Pl. Mem. in Opp'n) at 4]. The Court agrees with the Defendant.

First, the Court notes again this case's procedural posture. Plaintiff's former co-workers' name-calling and arguable harassment is more likely an offensive and informal expression of their opinion of Plaintiff or his actions at the time rather than a statement of an earnestly held belief that he was intellectually disabled. Although the reasonableness of a literal interpretation of the remarks strain credulity, the Court will assume that Plaintiff's former co-workers' believed that their offensive remarks were literally true. It does not follow, however, that Jarvis Airfoil's knowledge of his former co-workers' offensive comments and their failure to remediate the issue establishes that Jarvis Airfoil believed that Mr. Everitt was intellectually disabled. *Zako* does not offer legal support for a contrary rule.

In *Zako*, the plaintiff alleged, *inter alia*, that his employer discriminated against him because of his medical condition called "Grosshematuria disease, which caus[ed] frequent urination, and […] bleeding in the lower urinary tract' if [he was unable] to urinate immediately." *Id.* (internal quotations omitted). The employer reassigned plaintiff to a different position which would require overnights and he alleged that as a result he would be unable to use the bathroom as frequently as necessary. *Id.* The plaintiff alleged that although he was assured bathroom breaks would not be an issue, his supervisor refused to allow him to use the bathroom and then threatened to send plaintiff home when he protested. *Id.* at 1-2. He further alleged that two supervisors denigrated him because of his urinary problems and that the director of operations was aware of the harassment and plaintiff's need to frequently use the bathroom. *Id.* at 8. Accordingly, the district court (Shea, J) denied the defendant's motion to dismiss the plaintiff's disability discrimination claim arising from his actual or perceived disability, grosshematuria disease. *Id.* at 8.

This case is distinguishable from *Zako* on several fronts. First, in *Zako*, the employee had an actual medical condition of which he informed his employer and of which the director of operations agreed to accommodate, in principle, stating he would allow the employee to take breaks as needed. *Id.* at 1. After a conflict with his supervisor over a bathroom break, Plaintiff complained about the supervisor's "refusal to accommodate" his "need to urinate frequently" to the director of operations, who never responded. *Id.* at 2. The plaintiff then provided a doctor's note to the employer further explaining his condition. *Id.* After providing this

medical documentation, his work environment deteriorated, and he was disciplined although his performance never declined. *Id.* Later, when he asked the director of operations whether he could apply for advancement opportunities, he was told, "[n]o because they all require you to do overnights which you cannot do because of your bathroom issues." *Id.* When the plaintiff replied that the incumbent employee was not required to work overnights, the manager responded that "[w]ell you might have to." *Id.* The plaintiff was excluded from other positions that were available that did not require him to work nights. *Id.* Hence, the plaintiff in *Zako* plausibly alleged that the employer believed that he had a medical condition that functionally limited his ability to work and treated him adversely on that basis, regardless of whether the condition actually arose to the level of a disability itself.

By comparison, Mr. Everitt does not offer any allegations to show that Jarvis Airfoil had any reasonable basis to believe that Mr. Everitt was cognitively impaired. The only evidence he alleges are stray remarks of coworkers amounting to horseplay.  He alleges no evidence to suggest that he or anyone else informed Jarvis that he had a mental disability. Further distinguishing him from the employee in *Zako,* Plaintiff does not allege that Jarvis was asked to, much less agreed to, modify his job duties to accommodate such a misbelief. *Compare to Birnback v. Americares Foundation, Inc.*, No. 3:19-CV-1328 (VLB), 2020 WL 3510843, at *7 (D. Conn. June 29, 2020)(Bryant, J) (plaintiff alleged that he was regarded as having a learning disability where the supervisor wrote "I think the team has done their best to adapt to Marc's learning style and information processing" in plaintiff's performance review and another employee provided

16

plaintiff with substantial assistance on work tasks). Here, there is no claim that Jarvis ever communicated in any manner to reflect a belief that Plaintiff was mentally disabled.

Second, unlike *Zako*, Plaintiff does not allege that any supervisors participated in the alleged offensive behavior. Indeed, the supervisor's offensive remarks in *Zako* could reasonably be construed to reflect their belief that the plaintiff had the functional impairment that he claimed, i.e. one supervisor shook his head in disgust whenever plaintiff requested a bathroom break and another stated "I would never want to take a road trip with you in the car." *Id*. at 8. This conduct also supports the conclusion that the supervisors held him in contempt because of a condition that they perceived to render him disabled. Here, the facts alleged by Plaintiff do not plausibly suggest that Jarvis Airfoil ever considered Plaintiff to have trouble with his mental acuity and therefore regarded him as disabled.

For these reasons, Plaintiff fails to state a claim for disability discrimination in violation of the ADA because Plaintiff fails to plausibly allege that he is disabled within the meaning of the statute. Count one of the amended complaint is dismissed with prejudice.

### Plaintiff's CFEPA claim

It is well established that the definition of a physical disability under the CFEPA is broader than the ADA because the CFEPA does not require the impairment to "substantially limit major life activities." *See* Conn. Gen. Stat. § 46a-51(15); *see also Beason v. United Techs. Corp*., 337 F.3d 271, 277 (2d Cir. 2003). As the Court noted previously, at least one Connecticut court has held that "Connecticut case law is

clear that carpal tunnel syndrome is considered a disability under the CFEPA, and individuals who can show they suffer from carpal tunnel syndrome are protected under that statute." *Sorak v. Companions & Homemakers, Inc.,* No. HHDCV126028007S, 2014 WL 3397784, at \*3 (Conn. Super. Ct. May 30, 2014). Defendant concedes that a broader definition applies as to whether Plaintiff is disabled under state law. [Dkt. 33 (Def. Mem. in Supp.) at 10]. Instead, Defendant argues that Plaintiff cannot establish the causation element between his carpal tunnel syndrome and his termination. [*Id*. at 10-11]. In opposition, Plaintiff argues that Defendant treated employees who were not disabled more favorably by failing to take any corrective action in response to Plaintiff's complaints about his co-workers' offensive comments and then swiftly terminating Plaintiff without an investigation. [Dkt. 37 (Pl. Mem. in Opp'n) at 4-5].

Pursuant to 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-- the district court has dismissed all claims over which it has original jurisdiction[.]" In determining whether the district court should proceed adjudicating the state law claim pursuant to its supplemental jurisdiction, federal courts weigh "values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "In the usual case in which federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n.7.

Both of the Court's rulings addressed the sufficiency of Plaintiff's pleadings and the Court has not weighed the substance of his claims. There are no extenuating

or exceptional circumstances that would suggest that this case must remain in federal court. As a matter of comity, whether Plaintiff has sufficiently alleged a viable CFEPA claim is a question of Connecticut law, appropriate for disposition in the state court.

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim at this early stage in the litigation and dismisses Count two without prejudice for lack of subject matter jurisdiction.

### Conclusion

For the aforementioned reasons, the Court GRANTS Defendant's motion to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief may be granted as on Count one for disability discrimination in violation of the ADA. Count one is dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim and dismisses Count two without prejudice.

IT IS SO ORDERED

_____/s/_____

Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: December 8, 2020